FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MATTHEW M.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 4:26-CV-05052-MKD

ORDER AFFIRMING DECISION OF THE COMMISSIONER

**ECF Nos. 8, 10**

Before the Court are the parties' briefs. ECF Nos. 8, 10. Maren Bam represents Plaintiff. Special Assistant United States Attorney Benjamin Groebner represents Defendant. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court affirms the Commissioner's decision.

[1] To protect the privacy of plaintiffs in social security cases, the Court identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

## JURISDICTION

Plaintiff protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits on October 18, 2022, alleging disability beginning December 6, 2021. Tr. 253-69. The applications were denied initially and upon reconsideration. Tr. 82-109. An administrative law judge (ALJ) held hearings on April 5, 2024, and February 7, 2025. Tr. 45-81. On February 21, 2025, the ALJ issued an unfavorable decision. Tr. 21-44. The Appeals Council denied review on February 10, 2026. Tr. 1-6. Plaintiff appealed this decision on April 13, 2026. ECF No. 1.

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citations omitted). "Substantial evidence" means "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (citation modified). Stated differently, substantial evidence equates to "more than a mere scintilla, but less than a preponderance."

*Id.* (citation modified). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, the Court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted). Further, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. (citation omitted). An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (citation modified). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 6, 2021, the alleged onset date. Tr. 26.

At step two, the ALJ found Plaintiff has the following severe impairments: attention deficit hyperactivity disorder; major depressive disorder; generalized anxiety disorder; status post cerebrovascular accident; and substance use disorder. Tr. 26.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 27.

The ALJ then found Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally balance; frequently stoop, kneel, crouch and crawl; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds. He can frequently reach overhead with the upper extremities; he can frequently handle and finger with the upper extremities. [Plaintiff] is limited to simple tasks involving no more than simple instructions and simple work-related decisions with few workplace changes. He can tolerate occasional interaction with coworkers and supervisors, and no interaction with the public.

Tr. 29.

At step four, the ALJ found Plaintiff cannot perform his past relevant work as a dishwasher or truck driver. Tr. 37. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, Plaintiff could perform jobs existing in significant numbers in the national economy, including bench worker, electronics worker, and marker. Tr. 37-38.

Therefore, the ALJ concluded Plaintiff has not been under a disability at any time from December 6, 2021, through the date of the decision. Tr. 39.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly assessed the medical opinion evidence;
2. Whether the ALJ properly assessed Plaintiff's testimony;
3. Whether the RFC is supported by substantial evidence; and
4. Whether the ALJ adequately developed the record.

ECF No. 8 at 1.

## DISCUSSION

### A. Medical Opinion Evidence

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017

WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2) (emphases added). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of

examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 792. However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

Plaintiff argues the ALJ improperly assessed one medical opinion and erred by making a substance use materiality determination when evaluating that opinion. ECF No. 8 at 13-16.

*1. ARNP Braswell*

Plaintiff argues the ALJ improperly assessed the March 2024 opinion of ARNP Braswell. ECF No. 8 at 13-16. ARNP Braswell opined that Plaintiff had marked limitations in understanding information and managing himself in the workplace; extreme limitations in remembering information, concentrating, persisting, and maintaining pace; would miss more than four days of work per month; and could not sustain full-time work. Tr. 1834-36. The ALJ found the opinion of little persuasive value. Tr. 36-37.

The ALJ first found the opinion unsupported because the questionnaire omitted Plaintiff's active substance use disorders even though her treatment

records repeatedly documented those conditions. Tr. 36. This finding is legally sound because supportability concerns the objective evidence and explanations a provider presents for the opinion. *See Woods*, 32 F.4th at 791-92; 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Substantial evidence supports the finding. The questionnaire asked ARNP Braswell to identify the diagnoses supporting her assessed limitations. Tr. 1834. She listed ADHD, depression, PTSD, and a history of cerebrovascular accident, but no substance use diagnosis. Tr. 1834. Yet her December 2023 intake, at the start of the treatment relationship identified on the questionnaire, diagnosed opioid dependence with current use and methamphetamine abuse and recorded ongoing fentanyl and methamphetamine use. Tr. 1431, 1433, 1435. The ALJ reasonably treated that unexplained omission as one concern with the support ARNP Braswell offered for the assessed limitations.

The ALJ also discounted Ms. Braswell's opinion as unsupported by her treatment notes, which documented improvement with medication and findings that conflicted with the degree of limitation assessed. Tr. 36. An ALJ may discount an opinion that is inconsistent with the provider's treatment notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Substantial evidence supports this finding. In January 2024, Plaintiff reported that guanfacine helped his memory, his mood was "pretty well," and his depression was lighter. Tr. 1405-

07. In March 2024, he reported benefit from guanfacine and Abilify and displayed linear, goal-directed thought. Tr. 1340-42. In April 2024, he reported better concentration, focus, sleep, and mood with medication and again displayed linear, goal-directed thought. Tr. 1320-23. Although the same records also documented significant symptoms, including high screening scores and anxious affect, *see, e.g.*, Tr. 1341-42, 1406-07, the ALJ reasonably found the repeated reports of improved memory, concentration, and focus inconsistent with ARNP Braswell's extreme ratings in those same cognitive domains.

The ALJ further discounted ARNP Braswell's opinion as inconsistent with ARNP Franco's consultative opinion and examination. Tr. 36-37. This was a legally valid consistency reason. *See Woods*, 32 F.4th at 792-93; 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Substantial evidence supports the finding. ARNP Franco found intact attention and concentration, serial-seven subtraction without error, immediate and delayed recall of three of three objects, the ability to follow a three-step command, only mild memory impairment, average intellectual functioning, and fair insight and judgment. Tr. 1841-42. His accompanying form assessed no limitation in understanding, remembering, and carrying out simple instructions, a mild limitation in making simple work decisions, and moderate limitations in complex instructions, social interaction, and workplace changes. Tr. 1845-46. These findings directly conflicted with ARNP Braswell's extreme

memory and concentration ratings. ARNP Franco's narrative separately assessed moderate limitations in sustaining pace and regular attendance. Tr. 1843. Together, this evidence permitted the ALJ to find the sources inconsistent.

The ALJ accordingly did not err by discounting ARNP Braswell's opinion.

*2. Substance Use*

Plaintiff also argues the ALJ improperly made a substance use materiality determination when evaluating ARNP Braswell's opinion. ECF No. 8 at 14-16. An ALJ must first complete the ordinary five-step inquiry without separating the effects of drug addiction or alcoholism. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). Only after finding the claimant disabled considering all impairments does the ALJ determine whether the claimant would remain disabled absent substance use. *Id.* The ALJ followed that sequence. The ALJ found Plaintiff's substance use disorder severe, Tr. 26, considered the evidence of active use together with Plaintiff's other impairments throughout the RFC analysis, Tr. 32-36, and found Plaintiff not disabled at step five, Tr. 38. The ALJ did not find that Plaintiff's limitations would disappear absent substance use or otherwise separate effects related to substance use from the initial disability analysis. Tr. 26-38. Evaluating whether ARNP Braswell's supporting explanation accounted for conditions documented in her own records was a supportability analysis, not a materiality finding. Plaintiff has not shown error under *Bustamante*.

**B. Plaintiff's Testimony**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 8 at 10-16. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks and citation omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks and citation omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and footnote omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as*

*amended* (Apr. 9, 1996)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 30. The ALJ offered numerous reasons to discount Plaintiff's testimony, at least three of which the Court finds well supported.

First, the ALJ discounted Plaintiff's testimony as inconsistent with the objective medical evidence, including physical examinations, mental status examinations, and cognitive testing. Tr. 30-34. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Substantial evidence supports this ground. Although the record contained some abnormal findings, examinations generally documented normal strength, sensation, reflexes, gait, motor functioning, and grip. *See, e.g.*, Tr. 491-92, 1480. Following treatment for his hand injury, Plaintiff displayed a fully healed graft with good mobility and grip. Tr. 1329. ARNP Franco's consultative examination also documented only mild memory impairment, intact attention and concentration, successful serial-seven testing, immediate and delayed recall of three of three objects, and the ability to follow a three-step command. Tr. 1841-42. These findings appropriately addressed the physical, memory, and concentration functions Plaintiff alleged were impaired. *See Ortiz v. Bisignano*, 179 F.4th 691, 717 (9th Cir. 2026). The ALJ

also acknowledged the abnormal evidence and incorporated exertional, manipulative, cognitive, and social restrictions into the RFC. Tr. 29-34. The ALJ did not err and relied on substantial evidence in discounting Plaintiff's testimony on this ground.

Next, the ALJ discounted Plaintiff's testimony as inconsistent with Plaintiff's improvement with treatment. Tr. 31-34. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)). Substantial evidence supports this ground. *See, e.g.*, Tr. 1453-56 (August 2023 treatment note indicating Plaintiff was receiving benefit from medication and his mood was stable); Tr. 1447 (November 2023 treatment note indicating Plaintiff's concentration was "somewhat better" when taking medication); Tr. 1405-07 (January 2024 treatment note indicating guanfacine helped Plaintiff's memory, his mood was "pretty well," and his depression was lighter); Tr. 1340-42 (March 2024 treatment note indicating guanfacine was helpful and Plaintiff's mood was better with Abilify); Tr. 1320-23 (April 2024 treatment note indicating better concentration, focus, sleep, and mood with medication). Plaintiff's hand pain improved despite some residual restricted motion and numbness; the graft was well healed; and Plaintiff had been discharged from plastic surgery without further recommendations. Tr. 1908-10. The ALJ

acknowledged that Plaintiff continued to experience symptoms and that later records documented deterioration, but reasonably found the repeated evidence of improvement relevant to the alleged intensity and persistence of his symptoms. Tr. 32-34. The ALJ thus reasonably relied on improvement with treatment to discount Plaintiff's testimony.

Finally, the ALJ discounted Plaintiff's testimony as inconsistent with his reported activities. Tr. 31. An ALJ may consider activities that contradict a claimant's testimony. *Molina*, 674 F.3d at 1112-13. Substantial evidence supports this finding. Plaintiff reported that he exercised by riding a bicycle and longboard and walked where he needed to go. Tr. 461. The ALJ reasonably found these activities inconsistent with Plaintiff's statements concerning the intensity, persistence, and limiting effects of his stroke-related physical limitations. Tr. 31. Plaintiff argues these activities do not demonstrate the ability to sustain full-time work. ECF No. 8 at 18. The ALJ, however, did not find that the activities independently established transferable work skills. Daily activities may be considered when they contradict a claimant's alleged limitations even if they do not establish that the claimant can perform full-time employment. *Smartt v. Kijakazi*, 53 F.4th 489, 499-500 (9th Cir. 2022). The ALJ did not err by considering Plaintiff's activities for that limited purpose.

Because the ALJ gave at least three valid reasons for discounting Plaintiff's testimony, the Court need not address the balance of the ALJ's stated reasons for discounting Plaintiff's testimony. Any inclusion of erroneous reasons was inconsequential and therefore harmless. *See Carmickle*, 533 F.3d at 1162.

**C. RFC**

Plaintiff argues the RFC is unsupported because the ALJ did not adopt a medical opinion assessing each of the RFC's exertional, manipulative, and mental restrictions. ECF No. 8 at 8-11. A claimant's RFC is the most the claimant can do despite physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ, rather than a medical source, is responsible for assessing the RFC from all relevant evidence and translating credited clinical findings into a succinct RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The Ninth Circuit has recognized that ALJs are, "at some level, capable of independently reviewing and forming conclusions about medical evidence." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).

Substantial evidence supports the physical RFC. Dr. Haynes testified that Plaintiff's stroke warranted occasional balancing and no climbing of ladders or scaffolds but did not support restrictions in sitting, standing, walking, or lifting. Tr. 70-72. The ALJ found this opinion significantly persuasive, adopted the balance and ladder/scaffold restrictions, and further restricted Plaintiff to light

work. Tr. 29, 35. The record also supported the manipulative limitations. Although Plaintiff had a positive Romberg sign and difficulty performing rapid alternating movements, he otherwise exhibited normal strength, sensation, reflexes, gait, and finger-to-nose, heel-to-shin, and tandem-walking coordination. Tr. 491-92. Subsequent examinations documented equal grips and good range of motion, Tr. 1480; a fully healed graft with good hand mobility and grip, Tr. 1329; and improved hand pain and a well-healed graft, although some restricted motion and numbness persisted, Tr. 1908-10. Dr. Roberts's questionnaire did not assess handling, fingering, or reaching. Tr. 1146-47. The ALJ also reasonably accounted for Plaintiff's shoulder injury by restricting overhead reaching, given the later examination showing good range of motion in all major joints. Tr. 27, 29, 1480. Plaintiff's reliance on *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975), is misplaced because the ALJ relied on record evidence rather than independently consulting medical texts.

Substantial evidence also supports the mental RFC. ARNP Franco assessed no limitation in understanding, remembering, or carrying out simple instructions; a mild limitation in making simple work decisions; and moderate limitations in complex instructions, social interaction, and workplace changes. Tr. 1845-46. Although his narrative assessed moderate limitations in pace and attendance, it did not identify a specific amount of off-task time or absenteeism. Tr. 1843. The ALJ

gave the opinion some persuasive value and reasonably translated it, together with the treatment record and the properly evaluated symptom evidence, into simple tasks, simple instructions and decisions, few workplace changes, occasional interaction with coworkers and supervisors, and no public interaction. Tr. 29, 35-36. Plaintiff has not identified a credited limitation omitted from the RFC.

Plaintiff's derivative step-five argument assumes that he should have been restricted to occasional handling and fingering. ECF No. 8 at 10-11. Because the ALJ was not required to adopt that limitation, the vocational expert's testimony that an individual with the assessed RFC could perform jobs existing in significant numbers constituted substantial evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

**D. Development of the Record**

Plaintiff argues the ALJ should have ordered a physical consultative examination and recontacted ARNP Franco. ECF No. 8 at 11-13. Although an ALJ has an independent duty to develop the record, that duty is triggered when the evidence is ambiguous or the record is inadequate to permit proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The agency has broad latitude in deciding whether to order a consultative examination, and such an examination is generally needed when essential evidence is absent or an ambiguity or insufficiency must be resolved. *Reed v. Massanari*, 270 F.3d 838, 841-42 (9th

Cir. 2001).

The ALJ did not err by declining to order a physical consultative examination. Further examination was unnecessary once the ALJ had sufficient medical and nonmedical evidence to evaluate Plaintiff's physical functioning. *See id.* Substantial evidence supports the ALJ's decision. At the first hearing, counsel initially identified a possible medical source statement from ARNP Braswell, then stated the record was complete. Tr. 48-49. After Plaintiff described his treatment, the ALJ continued the hearing, directed counsel to obtain ARNP Braswell's records, ordered a psychological consultative examination, and advised that a neurologist might testify about the stroke residuals. Tr. 59-62. The ALJ then obtained ARNP Franco's examination and held a supplemental hearing at which Dr. Haynes reviewed the record and gave a function-specific neurologic opinion. Tr. 68-72, 1838-47. At that hearing, counsel confirmed there were no outstanding records. Tr. 68.

The record also included years of examinations addressing gait, coordination, strength, sensation, grip, range of motion, and the course of Plaintiff's hand injury. *See, e.g.*, Tr. 491-92, 1329, 1480, 1908-10. The early state agency findings of insufficient evidence were based on Plaintiff's failure to respond to repeated requests for work history, activities of daily living information, and whether he was willing to attend a consultative examination, and they

preceded the later development of the record. Tr. 84-85, 98-99. Even assuming Plaintiff's mental and cognitive impairments heightened the ALJ's duty, the ALJ satisfied that duty by continuing the first hearing, directing counsel to obtain ARNP Braswell's records, obtaining a psychological consultative examination, securing Dr. Haynes's review and testimony, and confirming at the second hearing that no records remained outstanding. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). On this record, Plaintiff has not identified a physical ambiguity or insufficiency requiring another examination.

The ALJ also did not err by declining to recontact ARNP Franco. Even when an opinion uses vague or internally imprecise terminology, recontact is unnecessary if the record as a whole remains adequate to evaluate the claim. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). ARNP Franco supplied a detailed examination, cognitive testing, a narrative opinion, and a standardized form that rated specific work functions from no limitation through moderate limitation. Tr. 1838-47. The form defined a moderate limitation to mean that the individual's ability to function on a sustained basis was "fair." Tr. 1845. The ALJ recognized an inconsistency between the narrative description of moderate difficulty with simple directions and the form's assessment of no limitation in simple instructions, and credited the opinion only for the broad proposition that Plaintiff had no more than moderate mental limitations. Tr. 35-36. The ALJ properly weighed this

inconsistency. ARNP Franco's function-specific form, examination results, and the longitudinal evidence permitted the ALJ to evaluate Plaintiff's mental functioning without clarification. *See Ford*, 950 F.3d at 1156.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

2. Defendant's Brief, **ECF No. 10**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 30, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE